HON. J. G. TALIAFERRO,
HON. R. K. HOWELL,
HON. W. G. WYLY,
HON. W. W. HOWE,
} *Associate Justices.*

---

### No. 365.—HAMILTON & Co. *v.* J. C. ELSTNER.

The keeping of a warehouse floating on the water is an employment requiring skill, and any person engaged in this kind of business who fails to exercise that skill is guilty of gross carelessness. 24 An. 165.

A person keeping such a warehouse who receives a lot of gunpowder on storage is liable to the owner for its value in case of loss by the sinking of the wharfboat, because the sinking occurred through the failure of the warehouseman to exercise the required skill to prevent it, or by failing to remove the powder on storage before the floating warehouse sunk.

APPEAL from the Tenth Judicial District Court, parish of Caddo. *Levisee, J. C. M. Pegues,* for plaintiff and appellee. *Duncan & Moncure,* for defendant and appellant.

HOWELL, J. By an ordinance of the city of Shreveport, adopted in 1866, and still in force at the time this case was begun, the merchants of that city were required to store all gunpowder kept by them, in quantities exceeding a small specified amount, on a wharfboat lying at the levee and known as the wharfboat of Rapley & Co.

In January, 1868, this wharfboat was kept by the defendant Elstner, as a lessee of Rapley, and in that month the plaintiff stored with him

on this boat a quantity of gunpowder, for the value of which this suit was brought. About two weeks after, without the knowledge or consent of plaintiff, the defendant removed this powder and stored it on another wharfboat named the Cincinnati, lying outside of the Rapley & Co. boat. On Sunday, the ninth of February, the defendant received and placed on this outer wharfboat an unusually large consignment of quartermaster and commissary stores belonging to the United States army, consisting among other articles of seventeen hundred bales of hay and eighteen hundred sacks of grain, weighing some three hundred and fifty tons. A witness employed on her, testifying for defendant, stated that she had never been so heavily laden before since witness had been in charge of her. On Wednesday morning, the twelfth, she began to leak badly, in such a way as to excite apprehension of sinking. Pumps were set to work, but the water still gaining, other pumps were procured by which the water was a little reduced. About noon the defendant's employes began to shift the cargo from the guard next the river and put it on the bow. In the opinion of the witness already quoted, if the hands had then been set to work to remove the cargo they might have saved it. At dark the water in the stern was somewhat lower, and the apprehensions of those on board were somewhat relieved. But the fact seems to have been that this lowering of the water in the stern was produced not by any real reduction in the amount of leakage or the amount of water in the boat, but by the shifting of the cargo to the bow. At nine o'clock in the evening the leaking began to increase, and then for the first time an attempt was made to remove the cargo, but too late. The boat sunk at three o'clock next morning, and the plaintiffs' powder was totally lost. Thereupon this action was commenced for its value, and the plaintiff having had judgment in the court below the defendant appealed.

The appellant makes two points here. First, that his liability is that of a warehouseman ; and second, that as such he is only required to exercise ordinary care. We may admit the correctness of both these propositions, and yet fail to perceive any error in the judgment. The question whether a person has failed to exercise ordinary care in his vocation, or what is the same thing, has been guilty of gross carelessness, depends in great measure upon the nature of that vocation. It would be gross carelessness for a workman to smoke in a powder mill ; but it might not be gross carelessness for a blacksmith to smoke at his forge. Circumstances proverbially alter cases. And hence it has been held by this court and by the Supreme Court of the United States, that in an employment requiring skill the failure to exercise that skill is gross carelessness. Bussey v. the Mississippi Valley Transportation Company, 24 An. 165.

Now, the keeping of a wharfboat or warehouse floating on the water is certainly an employment requiring skill. It is exposed to many dangers which do not threaten the business of keeping a warehouse on land. The perils of leakage and sinking are, as appears by testimony in this case, unceasing in their attacks, yet they may be repelled by skillful care, or else the business would come to an end. We think it plain that defendant failed to exercise toward the plaintiffs the skill demanded by his employment. Having, without the consent of plaintiffs, removed their powder from the Rapley boat, where it was safe, to another boat, he received on that other boat for his own advantage and purposes an unusually large consignment of freight. It appears from the testimony that the Cincinnati, before this, was but lightly laden and lay well up in the water, and it is probable that the seams thus exposed had opened, so that when the great weight of army stores was placed upon her and she settled down, the leakage commenced. The testimony also makes it probable that the pumps were inadequate, or the force to man them insufficient. It further appears that the defendant had about twenty hours from the time when the danger of sinking announced itself in which to remove the plaintiffs' powder; and of these ten or twelve were hours of daylight, when there would have been no danger of fire in such removal. It would have required but the work of a few moments to have replaced the powder on the Rapley boat, from which, in strictness, the defendant should never have removed it. After a review of the whole evidence, we are of opinion that the defendant failed to exercise the care which the law requires from one in his business.

Judgment affirmed.